UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| John Solak, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>             - against -<br><br>Prestige Consumer Healthcare Inc.,<br><br>                     Defendant | 3:22-cv-1357 (BKS/ML)<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Prestige Consumer Healthcare Inc. ("Defendant") manufactures, labels, markets and sells "Wild Cherry" pectin lozenges shown with two cherries and a cherry leaf under the Luden's brand ("Product").



2. Flavoring in over-the-counter ("OTC") drug products like demulcents is important to consumers even though it does not affect their therapeutic qualities.

3. While OTC products are not required to designate the source of their flavor in the same way as food, both are required to refrain from false and misleading representations.

4. According to research by Mintel, consumers have a hierarchy in their preferences for the source of a product's taste.

5. First is when a product's taste comes from its highlighted ingredient, such as cherry oil or cherry extract from cherries.

6. The second and third options are natural flavors from cherry and other natural sources and artificial flavors from non-natural sources.

7. Surveys by Nielsen indicate that between sixty and eighty percent of consumers try and avoid artificial flavors, which is why the trade journal Perfumer & Flavorist, described "The Future of Artificial Flavors" as bleak.

8. The reasons expressed include their use of chemical compounds, believed to have negative health and environmental effects.

9. Avoiding artificial flavoring in OTC products is more important than in foods because the former are used when addressing medical conditions.

10. By describing the lozenges as "Wild Cherry" above two ripe picked cherries, consumers will expect its taste comes from cherry ingredients and lacks artificial cherry flavoring.

11. However, the ingredient list reveals the absence of cherry ingredients, with the cherry taste coming from "flavor [and] malic acid."

*Inactive ingredients* ascorbic acid, citric acid, corn syrup, FD&C blue no. 2, FD&C red no. 40, flavor, malic acid, sodium acetate, sodium chloride, soybean oil, sucrose, water

> **Inactive ingredients**: ascorbic acid, citric acid, corn syrup, FD&C blue no. 2, FD&C red no. 40, flavor, malic acid, sodium acetate, sodium chloride, soybean oil, sucrose, water

12. Based on laboratory and/or other analysis and information, the malic acid and/or flavor are from artificial sources, and impart a cherry taste to the pectin lozenges.

13. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.59 for 30 lozenges, excluding tax and sales.

## Jurisdiction and Venue

14. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

15. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

16. Plaintiff is a citizen of New York.

17. Defendant is citizen of Delaware and New York because it is a Delaware corporation with a principal place of business in Westchester County, New York.

18. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

19. The members of the class Plaintiff seeks to represent are more than 100, because the Product is sold with the representations described here in grocery stores, drug stores, convenience stores, big box stores, and online, in the States Plaintiff seeks to represent.

20. Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Broome County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

Parties

21. Plaintiff John Solak is a citizen of Binghamton, Broome County, New York.

22. Defendant Prestige Consumer Healthcare Inc. is a Delaware corporation with a principal place of business in Tarrytown, Westchester County, New York.

23. The Luden's brand of lozenges is one of the oldest in the world.

24. According to some, Luden's invented the lozenge category, and has built up goodwill and recognition.

25. Plaintiff purchased the Product at stores including CVS in Binghamton between 2020 and 2022, and/or among other times.

26. Plaintiff saw the two cherries and read "Wild Cherry" and believed the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

27. Plaintiff bought the Product at or exceeding the above-referenced price.

28. Plaintiff paid more for the Product than he would have had he known the wild cherry flavor was from artificial flavors from non-cherry sources, or would not have purchased it.

29. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

Class Allegations

31. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in

        the States of Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Virginia, Arkansas, South Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

32. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

33. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

34. Plaintiff is an adequate representative because his interests do not conflict with other members.

35. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

36. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

37. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>

38. Plaintiff incorporates by reference all preceding paragraphs.

39. Plaintiff saw and relied on the label and believed the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

40. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

41. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

42. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

43. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

44. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

45. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

46. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires.

47. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

48. Defendant's representations affirmed and promised that the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

49. Defendant described the Product so Plaintiff believed the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries, which became part of the basis of the bargain that it would conform to its affirmations and promises.

50. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

51. This duty is based on Defendant's outsized role in the market for this type of Product, the recognized Luden's brand.

52. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

53. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

54. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

55. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

56. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

57. The Product was not merchantable because Defendant had reason to know the

particular purpose for which the Product was bought by Plaintiff, because he expected the cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries, and he relied on its skill and judgment to select or furnish such a suitable product.

## Fraud

58. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its cherry taste was from cherry ingredients, not from artificial flavoring ingredients with no connection to cherries.

59. Defendant was aware of studies and reports showing that consumers prefer when the source of flavoring comes from the highlighted ingredient and avoid artificial flavoring.

## Unjust Enrichment

60. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   December 16, 2022

                                                Respectfully submitted,

                                                        /s/ Spencer Sheehan  
Sheehan & Associates, P.C.  
60 Cuttermill Rd Ste 412  
Great Neck NY 11021  
(516) 268-7080  
spencer@spencersheehan.com